# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

DAVEL CHINN,

          Petitioner,     :     Case No. 3:02-cv-512

- vs -                           Chief Judge Edmund A. Sargus, Jr.
                                     Magistrate Judge Michael R. Merz

CHARLOTTE JENKINS, Warden,
  Chillicothe Correctional Institution,

                                      :

          Respondent.

## SECOND SUPPLEMENTAL MEMORANDUM ON PROPOSED AMENDMENTS

This capital habeas corpus case is before the Court on Petitioner's Objections (ECF No. 193) to the Magistrate Judge's Supplemental Memorandum of December 13, 2017 (ECF No. 190). Respondent has replied to the Objections (ECF No. 194) and Chief Judge Sargus has recommitted the matter for reconsideration in light of the Objections (ECF No. 195).

In a Decision and Order of November 8, 2017, the Magistrate Judge denied Petitioner leave to amend his Petition to add lethal injection invalidity claims (proposed Grounds 24, 25, 26, & 27) on the basis of *In re Campbell,* 874 F.3d 454 (6th Cir. 2017), *cert. den. sub nom. Campbell v. Jenkins,* 138 S.Ct. 466 (2017). The same Order repeated an earlier denial of a motion to add claims under *Hurst v. Florida,* 136 S.Ct. 616 (2016), on the basis of *In re Coley*, 871 F.3d 455 (6th Cir. 2017). Chinn appealed (ECF No. 187), the Warden responded to the appeal (ECF No. 188), Chief Judge Sargus recommitted the matter (ECF No. 189), and the

Magistrate Judge adhered to the prior rulings (Supplemental Memorandum, ECF No. 190).

**The Ethics of Citation**

In the Supplemental Memorandum, the Magistrate Judge noted that "a number of judges of this Court have already held that *Hurst* is not to be applied retroactively." (ECF No. 190, PageID 10278, citing *Smith v. Pineda*, 2017 WL 631410 (S.D. Ohio Feb. 16, 2017)(Merz, M.J.); *McKnight v. Bobby*, 2017 U.S. Dist. LEXIS 21946 (S.D. Ohio Feb. 15, 2017)(Merz, M.J.); *Gapen v. Robinson*, 2017 U.S. Dist. LEXIS 130755 (S.D. Ohio Aug. 15, 2017)(Rice, D.J.); *Davis v. Bobby,* 2017 U.S. Dist. LEXIS 157948 (S.D. Ohio Sep. 25, 2017)(Sargus, Ch. J.); *Lindsey v. Jenkins*, Case No. 1:03-cv-702 (S.D. Ohio Sep. 25, 2017)(Sargus, Ch. J.); *Myers v. Bagley*, Case No. 3:04-cv-174 (S.D. Ohio Sep. 12,2017)(Marbley, D.J.)(unreported; available in that case at ECF No. 126); and *Robb v. Ishee*, Case No. 2:02-cv-535 (S.D. Ohio Sep. 12, 2017)(unreported; available in that case at ECF No. 213). None of these decisions had been cited by Chinn's counsel.

The Memorandum then notes:

> In all seven of these cases, the death row inmate is represented by one or more attorneys employed by the Federal Public Defender for the Southern District of Ohio. Therefore, each of those attorneys had notice – without doing any legal research – of these seven in-point precedents that reject the argument made in the Appeal. Moreover, all of those precedents are recent, having been handed down this year. And yet none of these precedents is cited in the Appeal. In any objections to this Supplemental Memorandum, Petitioner's counsel shall explain why failure to cite these cases is not a violation of Rule 3.3 of the Ohio Rules of Professional Conduct.

(ECF No. 190, PageID 10278-79.)

Counsel respond first that "none of these cases is 'legal authority in the controlling jurisdiction known to [undersigned counsel] to be direct adverse' to Chinn's position that *Coley* does not foreclose a *Hurst* claim like Chinn's." (ECF No. 193, PageID 10289.).

In *In re Coley*, 871 F.3d 455 (6th Cir. 2017), the Sixth Circuit denied another Ohio death row inmate permission to file a second-or-successive habeas petition raising a claim under *Hurst*. In doing so, it noted that the Supreme Court had not made *Hurst* retroactive to cases on collateral review. *Id.* at 457. Such a finding, by the Supreme Court itself, is required to authorize a second-or-successive habeas application under 28 U.S.C. § 2244(b)(2)(A). Lack of such a finding by the Supreme Court is not in itself fatal to Chinn's *Hurst* claim because this case is still his first habeas application. Therefore counsel are correct that none of the cited cases is adverse to "Chinn's position that *Coley* does not foreclose" his claim.

All seven of those opinions are, however, "legal authority" (i.e., case law) in the controlling jurisdiction (i.e. the Southern District of Ohio) which are adverse to Chinn's claim that *Hurst* applies retroactively. Each of those cases applied the Supreme Court's general retroactivity analysis in *Teague v. Lane*, 489 U.S. 288 (1989), and concluded *Hurst* does not apply retroactively. *See, e.g., Davis, supra*, 2017 U.S. Dist. LEXIS 157948 at *8. But Chinn's counsel apparently believe these seven decisions are not even relevant, stating, "even if the decisions were relevant . . ." Presumably that means they did not even deserve a "but see" citation; certainly they did not get one.

Asserting that they take their "professional obligations very seriously," counsel expound at some length on the doctrine of stare decisis and request the Court's guidance on the applicability of Rule 3.3(a)(2) of the Rules of Professional Conduct to unpublished district court rulings.

First they assert that a district court opinion "has no binding precedential value." (Objections, ECF No. 193, PageID 10289, citing *Bridgeport Music, Inc., v. Dimension Films*, 410 F.3d 792, 802, n. 16 (6th Cir. 2005).) *Bridgeport* is a copyright case regarding sampling a copyrighted sound recording and reproducing the sample in a film. At note 16, the court discusses *Grand Upright Music Ltd. v. Warner Bros. Records, Inc.*, 780 F. Supp. 182 (S.D.N.Y. 1991), and declines to follow it for three reasons, including that it is a district court opinion and as such has no binding precedential value.[1] A comment in a footnote in a copyright case about one of three reasons for not following a district court opinion from another circuit is not a holding of the Sixth Circuit. This judge would classify it as judicial dicta. It almost goes without saying that a district court opinion in the Second Circuit does not bind the Sixth Circuit. But the Sixth Circuit did not treat *Grand Upright* as meaningless – it just found it to be (1) non-binding and (2) unpersuasive. Nevertheless, non-binding opinions can be persuasive.

Do counsel wish to assert that a district court opinion has no precedential value even for the deciding judge? A basic principle of the rule of law is that like cases should be decided alike. Would they be open to having the undersigned refuse to give *Hurst* retroactive effect in one case and then, without explaining the change, to give it retroactive effect in the next case raising the issue?

The next general principle counsel cite is that "the doctrine of stare decisis does not compel one district judge to follow the decision of another." (Objections, ECF No. 193, PageID 10289). That is certainly an accepted principle.[2]

---

[1] The court noted, however, that the third reason, that here was no analysis set forth in the district court decision the appellate court was reviewing, was the most important reason for not citing *Grand Upright* as precedent.
[2] Interestingly, although there is abundant published precedent for this principle, Chinn's principal citation is to an unpublished decision while a page later in the Objections, his counsel assert "unpublished opinions are never controlling authority."

4

> There is no such thing as "the law of the district." Even where the facts of a prior district court case are, for all practical purposes, the same as those presented to a different district court in the same district, the prior "resolution of those claims does not bar reconsideration by this Court of similar contentions. The doctrine of *stare decisis* does not compel one district court judge to follow the decision of another." *State Farm Mutual Automobile Insurance Co. v. Bates,* 542 F. Supp. 807, 816 (N.D. Ga. 1982). Where a second judge believes that a different result may obtain, independent analysis is appropriate. *Id.*

*Threadgill v. Armstrong World Industries, Inc.,* 928 F.2d 1366, 1371 (3rd Cir. 1991). *See also Colby v. J.C. Penney Co., Inc.*, 811 F.2d 1119, 1124 (7th Cir. 1987) (district judges should not treat decisions of other district judges as controlling unless doctrines of *res judicata* or collateral estoppel apply); *United States v. Article of Drugs Consisting of 203 Paper Bags*, 818 F.2d 569, 572 (7th Cir. 1987) (single district court decision has little precedential effect and is not binding on other district judges in the same district); *Starbuck v. City and County of San Francisco*, 556 F.2d 450, 457 n.13 (9th Cir. 1977 (same); *Farley v. Farley*, 481 F.2d 1009 (3rd Cir. 1973) (even a three-judge decision of the district court is not necessarily binding on any other district court); and *EEOC v. Pan American World Airways*, 576 F. Supp. 1530, 1535 (S.D.N.Y. 1984) (district court decision was not binding even on other district courts in the same district).

Even though decisions of other judges of the same court are not binding precedent, most judges as a matter of comity or collegiality would want to know what their colleagues had written. The opinions of a neutral judicial colleague, after all, may balance the advocacy of parties in a case. In the absence of supervening case authority from the Supreme Court or the Court of Appeals, a court should as a matter of comity to colleagues and even-handed justice to litigants, follow decisions of its own judges. *See United States v. Hirschhorn*, 21 F.2d 758 (S.D.N.Y. 1927); Henry Campbell Black, *The Law of Judicial Precedents*, §104 (1912).

Chinn's counsel next argue that "the Sixth Circuit has indicated that the ethical rules

5

require disclosure of only published opinions in any event." (Objections, ECF No. 193, PageID 10290, *citing United States v. Marks,* 209 F.3d 577 (6th Cir. 2000).) The relevant portion of the *Marks* opinion reads:

> This court's opinion in [*United States v. Ware*, 161 F.3d 414 (6th Cir. 1998), cert. denied, 526 U.S. 1045 (1999)] unequivocally forecloses defendants' argument.
>
> *Ware* was decided on December 3, 1998. Defendants submitted their proof briefs in late January of 1999, nearly two months later. They do not mention *Ware*. Instead, they excoriate the government for its use of "bribed testimony" that was "illegally obtained"--as if Ware had never been decided. During all of the time between the submissions of their proof briefs in January of 1999 and oral argument in January of 2000, counsel never acknowledged, as permitted by Rule 28(j) of the Federal Rules of Appellate Procedure, that *Ware* had been decided and that their argument was foreclosed as a result.
>
> At oral argument, counsel admitted that they knew about *Ware*, but did not cite it in their briefs because they were "not sure where it would go in the appellate process." Presumably this meant that they hoped (unrealistically, in our view) that either this court en banc or the Supreme Court of the United States would overturn *Ware*. Because *Ware* is a published decision of this court directly contrary to Defendants' position, it should have been disclosed. See Model Rules of Professional Conduct Rule 3.3(a)(3) ("A lawyer shall not knowingly fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel"); Rule 3.3(b) (providing that this duty continues "to the conclusion of the proceeding.").

209 F.3d at 585. Thus Chinn's counsel correctly cite *Marks* for the proposition that a prior decision of the Sixth Circuit that "forecloses" an argument must be disclosed to the Sixth Circuit in a subsequent case. But the obligation to disclose X does not logically imply that there is no obligation to disclose anything else. For example, the fact that an attorney for one of the parties to an appeal is dating a law clerk of the panel member designated to write the opinion would not appear in a prior published opinion of the circuit; that would not imply that it did not need to be

disclosed.

Chinn's counsel finally argue that "unpublished opinions are never controlling authority," (Objections, ECF No. 193, PageID 10290, *citing Fonseca v. Consolidated Rail. Corp.*, 246 F.3d 585 (6th Cir. 2000[3]).) In *Fonseca,* the Sixth Circuit found a district court had erred in treating a prior unpublished Sixth Circuit decision as controlling. *Id.* at 585, citing 6th Cir. R. 28(g), and *Salamalekis v. Commissioner of Soc. Sec.,* 221 F.3d 828, 833 (6th Cir. 2000). Chinn also cites the undersigned's recent opinion in *United States v. Baltimore*, 2017 WL 5562294 (S.D. Ohio Nov. 20. 2017), for the same proposition. Since the opinion in *Baltimore* is unpublished, am I bound to follow it on this particular issue? Even if I am not bound, am I interested to know what I recently wrote in a reported opinion on the same question?

Chinn's counsel conclude by asserting there is a "current lack of clarity in the case law," and ask for "guidance" on the applicability of the rule to unpublished district court decisions." To respond usefully requires making some distinctions.

First of all, there is a rule of law about published Sixth Circuit opinions: they are controlling binding precedent for future Sixth Circuit panels and for all district courts in the circuit. But "published" in the circuit court context means designated for publication in the Federal Reporter. 6th Cir. Internal Operating Procedure 32.1(b)(1). No such rule exists for this District Court. Publication in the Federal Supplement or Federal Rules Decisions, the trial court parallel to the Federal Reporter, is dependent on submission by the deciding judge to Thomson Reuters. There is no legal difference between a district court decision published in Federal Supplement and one that is not.

By virtue of § 205 of the E-Government Act, Pub. L. 107-347, federal courts are required to make available to the public "all written opinions issued by the court, regardless of whether

---

[3] *Fonseca* was actually decided in 2001.

such opinions are to be published in the official court reporter, in a text searchable format." The Judicial Conference of the United States has adopted an official definition of "written opinion" as it is included in this statute to mean any decision by a judge that gives reasons for the decision. To effectuate the Act, then, federal judges are instructed to designate through the CM/ECF system any order that meets the definition. On a daily basis, the Westlaw, LEXIS, and Government Printing Office robotically extract these written opinions and make them available to the public, to subscribers in the case of Westlaw and LEXIS, and to the general public without fee in the case of the GPO. Searching Westlaw and LEXIS databases is apparently the principal means of conducting legal research in the United States today and the principal legal research skill taught to recent law school graduates.

The Model Rules of Professional Conduct were initially drafted by the Kutak Commission of the American Bar Association and adopted by the House of Delegates of the ABA in August 1983. Rule 3.3(a)(2) speaks of legal authority without distinguishing between published and unpublished opinions. The Model Rules were not adopted by the Ohio Supreme Court until February 1, 2007, more than twenty years after their promulgation by the ABA, but without taking any notice of how legal publishing and research had changed in the interim. The Rules became the governing ethical authority in this Court when adopted by the Ohio Supreme Court. *See* Rule IV(B) of the Rules of Disciplinary Enforcement attached to the Local Rules.

Whether or not Rule 3.3 requires in general the disclosure of prior unfavorable but relevant unpublished district court decisions, the Magistrate Judge regards as insufficiently professional the failure of Chinn's counsel to cite the seven cases cited in the Supplemental Memorandum. All of the cases are relevant to the question of whether *Hurst* is to be applied retroactively and all decide it is not. All of those opinions except the ones by Judge Marbley

8

were readily available on the LEXIS, Westlaw, and GPO databases. All of them, including those by Judge Marbley, had been distributed to the law offices for which Chinn's counsel work. Counsel do not assert that they considered these seven cases and found them to be irrelevant and therefore not required to be cited; such an assertion would be in any event incredible, given the concentration of these attorneys on capital defense work. It is not as if counsel were being questioned about their failure to cite unpublished district court decisions from Nebraska in 1987.

The point of this exercise is not to decide whether Chinn's counsel are subject to professional discipline. The Sixth Circuit in *Marks*, faced with a plain violation of Rule 3.3, did not refer the matter to disciplinary counsel; it merely chided counsel for their lack of mandated candor.[4] The Magistrate Judge here finds the failure to cite the prior cases a disappointing lack of candor and cautions against its repetition. To properly fulfill its judicial function, the Court needs to be in dialogue with recent opinions of other judges on the same topic, whether those opinions are binding or merely persuasive.

## *Hurst v. Florida* Does Not Apply to Cases on Collateral Review

Chinn seeks to amend his Petition to add two claims for relief under *Hurst v. Florida,* 136 S.Ct. 616 (2016). As noted above, every judge of this Court to consider the issue, including Chief Judge Sargus to whom this case is assigned, has decided that *Hurst* does not apply retroactively to cases on collateral review (See cases cited supra at p.2.)

Instead of suggesting an alternative analysis under *Teague v. Layne, supra*, Chinn argues the Court should stay this case pending Chinn's exhaustion of his *Hurst* claim in the state courts

---

[4] *See* James G. Carr, *A Judge's Guide to Protecting Your Reputation*, 36 Litigation, 26, 28 (Spring 2010) (emphasizing the importance of acknowledging relevant but unfavorable law without distinguishing between published and unpublished decisions.)

9

(Objections, ECF No. 193, PageID 10292). When he initially filed for leave to add a *Hurst* claim, he did not disclose that he had simultaneously filed a motion for new mitigation trial in the Montgomery County Court of Common Pleas nor did he seek a stay (Motion, ECF No. 145). In fact, he has never filed a motion for stay and abeyance under *Rhines v. Weber,* 544 U.S. 269 (2005), and only now suggests it would be appropriate.

Chinn notes that if the Ohio courts grant him relief, this case will be over and projects there is good reason to believe the Ohio courts will give *Hurst* retroactive effect (Objections, ECF No. 193, PageID 10292). The Magistrate Judge respectfully disagrees with that projection. In *State v. Fears*, 147 Ohio St. 3d 1439 (2016), the Ohio Supreme Court turned down a motion to stay Fears' execution pending determination of the applicability of *Hurst*. On the same day, the court denied a motion for relief based on *Hurst* filed by death row inmate Larry Gapen. *State v. Gapen*, 147 Ohio St. 3d 1440 (2016). Also on the same day it denied parallel motions in *State v. Myers*, 147 Ohio St. 3d 1440 (2016), and *State v. Sheppard*, 147 Ohio St. 3d 1439 (2016). None of these published decisions of the Ohio Supreme Court is cited in the Objections.

Chinn relies instead on the decision in *State v. Kirkland*, 145 Ohio St. 3d 1455 (2016), where the Ohio Supreme Court, without any discussion and by a 4-3 vote, granted a motion for relief and remanded a capital case for a new mitigation and sentencing hearing. Thus the weight of authority on *Hurst* retroactivity in the Ohio Supreme Court is four to one against, with no explanation in any of those cases.

The Ohio courts could lawfully apply *Hurst* retroactively under Ohio law. *Danforth v. Minnesota*, 552 U.S. 264 (2008). But under *Teague v. Lane, supra, Hurst* is not retroactively applicable as a matter of federal law and therefore Chinn's conviction and death sentence are not unconstitutional. Chinn should not be allowed to amend to add *Hurst* claims because the

amendment would be futile.

**Lethal Injection Invalidity Claims**

As to the motion to add lethal injection invalidity claims, Chinn stands on his prior argument (Objections, ECF No. 193, PageID 10294). Therefore no additional analysis is required.

**Conclusion**

Based on the foregoing analysis, the Objections should be overruled.

January 19, 2018.

s/ *Michael R. Merz*<br>United States Magistrate Judge